**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNYSLVANIA**

STEVEN MYKEL BAILEY,         )
           )
          Petitioner,      )      Civil Action No. 11-1020
           )
       v.           )
           )
ROBERT B. STEWART and THE      )      Chief Magistrate Judge Lenihan
ATTORNEY GENERAL OF        )
THE COMMONWEALTH OF        )
PENNSYLVANIA,          )
           )
          Respondents.   )

## MEMORANDUM OPINION

Steven Mykel Bailey ("Petitioner"), a state prisoner incarcerated at the State Correctional Institution at Pittsburgh, has petitioned this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition will be denied.

**Introduction**

Petitioner challenges his 2005 convictions for murder in the first degree, four counts of recklessly endangering another person, and carrying a firearm without a license. In his Petition, he raises the following claims for relief:

1. Trial counsel was ineffective for failing to request a jury instruction regarding Tammy Brown and Kelly Shipton denying that they told police that Petitioner stated before the shooting of Steele that "his days are numbered."

2. Trial counsel was ineffective for failing to request a jury instruction regarding voluntary manslaughter, imperfect self-defense and self-defense.

3. Trial counsel was ineffective for failing to request a jury instruction regarding the *crimen falsi* conviction of Charmaine Holloway.

4. Appellate counsel was ineffective for failing to raise a sufficiency claim regarding first-degree murder.

5. Trial counsel was ineffective for failing to properly communicate and consider the plea offer, and appellate counsel was ineffective for failing to raise this claim in post-sentence motions.

6. Trial counsel was ineffective for failing to investigate Petitioner's mental health conditions at the time of the shooting, which included severe depression and attention deficit disorder, and appellate counsel was ineffective for failing to raise this claim in post-sentencing motions.

7. Trial counsel was ineffective for forcing Petitioner to testify at trial, and appellate counsel was ineffective for failing to raise this claim.

8. Trial counsel was ineffective for failing to request a cautionary instruction regarding rebuttal witness Charmaine Holloway, and appellate counsel was ineffective for failing to raise this claim.

9. Trial counsel was ineffective for failing to properly cross-examine Commonwealth witness Coley Davis, and appellate counsel was ineffective for failing to raise this claim.

10. Trial counsel was ineffective for failing to colloquy Juror Number 10 and appellate counsel was ineffective for failing to raise this claim.

11. Trial counsel was ineffective for failing to assure the presence of Judge Nauhaus at jury selection since Petitioner never waived his right to have a judge present.


**Relevant Facts and Procedural History**

The facts as recited by the Pennsylvania Superior Court are as follows:

> On the afternoon of June 8, 2004, Derrick Steele, the victim, accosted Tammy Brown, [Petitioner's] fiancée, while she was walking with her girlfriend, Kelly Shipton, and three children on Perrysville Avenue in the city of Pittsburgh. As Ms. Brown walked down the street carrying her and [Petitioner's] one-year-old daughter, the victim began yelling at Ms. Brown, threatening to kill [Petitioner] and demanding to speak with him concerning a long-standing argument between the two men. As the confrontation escalated, Ms. Brown became hysterical and had Ms. Shipton call [Petitioner] on Ms. Brown's cell phone. When he answered the phone, [Petitioner] could hear the victim shouting, "Where is your man? Get your man[!] Tell that mother fucker he's dead," could hear his fiancée yelling "get off me, stop hitting me," and heard his daughter crying. . . . A neighborhood fire station captain observed this "heated argument" and watched the

victim walk away from Ms. Brown as a police car approached. Ms. Brown walked to a nearby pharmacy with Ms. Shipton and the children.

Within a few minutes, [Petitioner] arrived at the pharmacy, picked up Ms. Brown, Ms. Shipton and the three children and drove them to Ms. Brown's house. [Petitioner] then drove a short distance to Mr. Bill's Tap & Grill Bar, where he pulled up parallel to the front entrance, put his foot on the brake, and saw the victim outside with two other men. [Petitioner] then reached across the front passenger seat of his car, aimed his gun in the direction of the men, and fired two shots. As the victim retreated into the bar, [Petitioner] fired two more shots after him into the glass in the door to the bar. One of these bullets penetrated the victim's head, killing him instantly.

As a result of this incident, [Petitioner] was charged with one count each of criminal homicide and carrying a firearm without a license, and four counts of recklessly endangering another person. The Honorable Lester G. Nauhaus presided over [Petitioner's] five-day jury trial in January 2005. The Commonwealth presented the testimony of several witnesses, including that of the victim's girlfriend, Charmaine Holloway. Ms. Halloway [sic] related an incident which had occurred seven months earlier when [Petitioner] had pulled a gun and threatened the victim.

In his defense, [Petitioner] testified that he had been threatened by the victim several times over the last few months, that he was scared of the victim, and that he had been shot at by the victim in March 2004. In addition, [Petitioner] testified that on the day of the shooting, as he pulled up in front of the bar, he saw the victim reach under his shirt for a shiny object that [Petitioner] thought might be a nickel-plated gun based upon previous confrontations with the victim. Finally, both Ms. Brown and Ms. Shipton testified on [Petitioner's] behalf and provided their account of events concerning [Petitioner] and the victim. The trial court instructed the jury on first-degree murder, third-degree murder, voluntary manslaughter and involuntary manslaughter. On January 10, 2005, the jury returned its guilty verdicts.

On March 15, 2005, the court sentenced [Petitioner] to life imprisonment without the possibility of parole for first-degree murder and to concurrent sentences of one to two years' incarceration for the remaining five convictions. [Petitioner] obtained new counsel and filed post-sentence motions raising claims of ineffective assistance of trial counsel. Judge Nauhaus presided over [Petitioner's] August 16, 2005 hearing on the post-sentence motions, which the court subsequently denied.

(ECF No. 8-4 at 1-4.)

On April 17, 2007, the Superior Court of Pennsylvania affirmed the judgment of the Court of Common Pleas in affirming Petitioner's judgment of sentence. Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on December 20, 2007.

On October 1, 2008, Petitioner, through appointed counsel, filed an Amended Petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann §§ 9541 *et seq*. On January 29, 2009, Judge Nauhaus denied relief.

Petitioner filed a timely Notice of Appeal and on October 1, 2010, the Superior Court affirmed the judgment of the PCRA Court denying him post-conviction relief. On March 30, 2011, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

On April 19, 2011, Petitioner filed a second PCRA petition, *pro se*, alleging the existence of newly discovered evidence. He submitted the testimony of a witness, Mark Brown, who indicated that he did not testify truthfully at the trial and saw another witness, Cooley Davis, pick up a gun from the victim, and then run from the scene. As of the filing of the Petition for Writ of Habeas Corpus at bar on July 26, 2011, this second PCRA petition had not yet been addressed in the state courts.

On February 6, 2013, Petitioner filed a Motion to Stay his federal habeas corpus proceedings while he litigated his PCRA claims in state court. This Court granted the Motion to Stay on February 12, 2013. Counsel for Petitioner made an oral motion to withdraw the second PCRA petition when witness Mark Brown indicated that he no longer wished to recant his trial testimony at a PCRA proceeding and would not cooperate with Petitioner or his counsel. On September 25, 2013, Judge Nauhaus issued an Order granting the motion to withdraw the second

4

PCRA petition. On October 1, 2013, on Motion to Lift Stay filed by the Commonwealth, this Court granted the motion and reopened the case.

As noted above, Petitioner filed his federal Petition for Writ of Habeas Corpus in this Court on July 26, 2011. Respondents filed an Answer to the Petition on September 27, 2011. Petitioner then retained counsel who submitted a supplemental Petition for Writ of Habeas Corpus on February 19, 2014.


**General Standards Governing Federal Habeas Corpus Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See*, *e.g.*, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). *See also* Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 687, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was *contrary to,*[1] *or involved an unreasonable application of,*[2] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

(2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*[3]

(Emphasis added).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted

---

[1]        "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.'  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)).  Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent.  *See* Kane v. Garcia Espitia, 546 U.S. 9 (2995)."  Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[2]        "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.'  Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)).  For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.'  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted).  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)).  Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ.  Andrade, 538 U.S. at 75."  Roundtree, 640 F.3d at 537 (parallel citations omitted).

[3]        "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  *See* Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); *see also* Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.').  Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)."  Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

by clear and convincing evidence.  *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).  *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

**Petitioner's Clams**

Petitioner has raised eleven claims of ineffective assistance of counsel in his Petition and the Commonwealth acknowledges that all eleven claims have been properly exhausted in the state courts.  Therefore, the claims will be considered on their merits pursuant to the standards governing habeas corpus petitions filed pursuant to 28 U.S.C. § 2254.

Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."  Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).  *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).  The United States Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance.  This is referred to as the Strickland test.  In Strickland, the Supreme Court held that counsel renders ineffective assistance when:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  Strickland, 466 U.S. at 687.

The first prong of the <u>Strickland</u> test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id</u>. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." <u>Id</u>. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. <u>Id</u>.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. <u>Id</u>. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id</u>. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. <u>Id</u>.

1. <u>Trial counsel was ineffective for failing to request a jury instruction regarding Tammy Brown and Kelly Shipton denying that they told police that Petitioner stated before the shooting of Steele that "his days are numbered."</u>

Petitioner contends that trial counsel was ineffective when he failed to request a limiting instruction concerning an exchange between the prosecutor and two defense witnesses during cross-examination. Specifically, Petitioner argues that the jury should have received a limiting instruction concerning questions asked of Tammy Brown and Kelly Shipton, regarding a statement they allegedly made to the police about Petitioner saying the victim's days were numbered. At trial, both witnesses denied that they made this statement to the police.

On direct appeal, Petitioner argued that the prosecutor's questioning of the witnesses about their prior inconsistent statements to the police required an instruction that the questions themselves were not evidence and that the answers could only be used to evaluate the witnesses' credibility and could not be used as substantive evidence. According to Petitioner, the absence of such an instruction left the jury with the impression that he had formed specific intent to kill before driving away to find the victim. The Superior Court disagreed, explaining as follows:

> In the instant case, both Ms. Brown and Ms. Shipton gave statements to the police within hours of the victim's murder. At trial, the prosecutor showed each witness her statement and asked whether she had told the homicide detectives that [the petitioner] had remarked "his days are numbered" as he left to find the victim. Both witnesses denied telling anyone that [the petitioner] had uttered those words and that, in fact, [the petitioner] had not remarked in any such manner. The Commonwealth did not seek the admission of either of the witnesses' statements as evidence. The prosecutor did not call the detectives who took the witnesses' statements, nor did he mention the remark purportedly attributed to [the petitioner] in his closing. Therefore, [the petitioner] was not entitled to the instruction he now claims should have been given. *See* Pa.S.S.Crim.J.I. §408A(2) Subcommittee Note (stating "alternative may be used if the statement is admitted for the limited purpose of impeachment.") As a result, counsel cannot be deemed ineffective for having failed to request the instruction and [the petitioner]'s claim merits no relief.

(ECF No. 8-4, Superior Court Memorandum Opinion dated April 17, 2007, at p.12; APP at p.135.)

Here, the underlying issue is whether or not Petitioner was entitled to the limiting instruction that he argues counsel should have requested. The Pennsylvania Superior Court determined that he was not entitled to such an instruction under Pennsylvania law. This Court cannot re-examine this determination of state law on habeas review. *See* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Furthermore, defense counsel cannot be ineffective for failing to request an instruction to which the defendant is not entitled. Therefore, Petitioner is not entitled to habeas relief on this claim.

    2. <u>Trial counsel was ineffective for failing to request a jury instruction regarding voluntary manslaughter, imperfect self-defense and self-defense</u>.

Petitioner argues that trial counsel was ineffective for failing to request a jury instruction on voluntary manslaughter, which included self-defense and imperfect self-defense. Petitioner contends that the victim's threats to kill him, the victim's harassment of his fiancée that day, and the sight of the victim reaching for something shiny under his shirt entitled him to this jury instruction. He also contends that had the instruction been given, there is a reasonable probability that the jury would have found him guilty of voluntary manslaughter based upon a theory of imperfect self-defense.

Petitioner raised this issue in his post-sentence motions. During a hearing on the motions, trial counsel was asked whether he remembered why he did not request a voluntary manslaughter or a self-defense instruction and testified that the evidence at trial was that Petitioner was in a position where he could have chosen to retreat if he believed that the victim had a gun. (ECF No. 8-1, Opinion of Court of Common Pleas dated Jan. 19, 2006, at p. 33; APP at p.33.) On direct appeal, the Superior Court noted that the trial court did instruct the jury on the elements of voluntary and involuntary manslaughter. However, it concluded that the evidence at trial did not support an instruction on imperfect self-defense theory, which under Pennsylvania law would have required Petitioner to show that he believed he was in imminent danger of death, that he did not violate any duty to retreat, and that he had not continued the difficulty which resulted in the killing. *See* <u>Commonwealth v. Broaster</u>, 863 A.2d 588, 596 (Pa. Super. Ct. 2004). The Superior Court found that Petitioner was not entitled to the instruction

because the trial testimony indicated that Petitioner sought out the victim and admitted to firing into the door after the victim had retreated. It further found that Petitioner had a duty and an opportunity to retreat but failed to do so. (ECF No. 8-4 at pp.6-9; Superior Court Memorandum Opinion dated April 17, 2007, APP at pp.129-132.)

Again, the underlying issue here, whether Petitioner was entitled to a jury instruction on an imperfect self-defense theory, is a question of state law that this habeas Court cannot review. The Pennsylvania Superior Court determined that Petitioner was not entitled to the instruction under Pennsylvania law and defense counsel cannot be ineffective for failing to request a jury instruction that is not applicable to the presented facts. Nevertheless, based on the testimony at trial, the state court's conclusion was consistent with the facts. Accordingly, Petitioner is not entitled to habeas relief on this claim.

3.  Trial counsel was ineffective for failing to request a jury instruction regarding the *crimen falsi* conviction of Charmaine Holloway.

Petitioner argues that trial counsel was ineffective for failing to request a jury instruction regarding Commonwealth witness Charmaine Holloways's *crimen falsi* conviction. On direct appeal, Petitioner maintained that he was entitled to an instruction under Pennsylvania Standard Criminal Jury Instruction 4.08D, advising the jury as to how Holloway's conviction could be used for impeachment purposes. The Pennsylvania Superior Court disagreed finding that Petitioner had not shown how the absence of the instruction adversely affected the outcome of his trial.

Holloway, who was the victim's girlfriend, testified as a rebuttal witness that while she and the victim were out on Halloween with her children in October 2003, Petitioner had approached them with a gun and threated to kill the victim. She admitted on direct examination

that she had been convicted of theft and was on probation at the time of the trial for that offense. The Superior Court concluded that there was no reasonable probability that the outcome of Petitioner's trial would have been different had counsel requested the proposed *crimen falsi* instruction in light of the remoteness in time of the alleged Halloween incident, Holloway's acknowledgment of her theft conviction, the court's charge on witness credibility, and the overwhelming evidence supporting Petitioner's conviction.  (ECF No. 8-4 at pp.13-14; Superior Court Memorandum Opinion dated April 17, 2007, APP at pp.136-37.)

Petitioner has not demonstrated entitlement to habeas relief as to this claim.  First, the state court applied the correct legal standard when it evaluated Petitioner's ineffective assistance claim.[4]  Therefore, its adjudication of the claim passes federal habeas review under the "contrary to" clause of § 2254(d)(1).  Second, Petitioner has not shown that fairminded jurists would disagree with the state court's decision that he was not prejudiced by trial counsel's failure to request the *crimen falsi* instruction.  Thus, he has not shown that the state court's adjudication of his claim was an "unreasonable application of" Strickland under § 2254(d)(1) or an unreasonable determination of the facts under § 254(d)(2).  As noted by the state court, Holloway admitted to her theft conviction on direct examination and the evidence at trial establishing Petitioner's guilt was overwhelming.[5]  Petitioner has not met his burden under AEDPA and therefore this claim must be denied.

---

[4] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

[5]  The Third Circuit Court of Appeals has noted that "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied."  Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (citing Strickland, 466 U.S. at 695).  This is so because "[a] court simply cannot" "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different[,]" "without considering the strength of the evidence against the accused."  Id.

4. <u>Appellate counsel was ineffective for failing to raise a sufficiency claim regarding first-degree murder.</u>

Petitioner claims that appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal. According to Petitioner, the Commonwealth failed to prove specific intent to kill. In dealing with Petitioner's post-sentence motions, the trial court recounted the evidence that was adduced at trial and determined that it sufficiently proved Petitioner's intent to kill. (ECF No. 8-1 at pp.29-32; Opinion of the Court of Common Pleas dated Jan. 19, 2006; APP at pp.29-32.) The PCRA court denied Petitioner's claim of appellate counsel ineffectiveness finding that the underlying claim lacked substantive merit (ECF No. 8-7 at p.44; Opinion of the Court of Common Pleas dated June 8, 2009, APP at pp. 269-271) and the Superior Court affirmed the denial of post-conviction relief on appeal (ECF No. 9-4 at pp.1-12; Superior Court Memorandum Opinion dated Oct. 1, 2010, APP at pp.393-404).

The federal constitutional standard for evaluating an alleged violation based upon a sufficiency of the evidence claim is found in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). Under <u>Jackson</u>, the Federal Court is to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id</u>. at 319 (emphasis in original). A habeas petitioner is entitled to relief only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." <u>Id</u>. at 324. *See* <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997) (applying <u>Jackson</u> standard), *cert. denied*, 522 U.S. 1059 (1998). Federal review of a sufficiency of the evidence claim under <u>Jackson</u> must be based on state law, that is, the substantive elements of the crime must be defined by applicable state law; although the minimum amount of evidence required by the Due Process Clause is purely a matter of federal law. <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Coleman v. Johnson</u>, 132 S.Ct. 2060, 2064 (2012).

The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review. Id. at 319.

In Pennsylvania, a conviction for first-degree murder may be sustained by proof of the element of intent inferred from the use of a deadly weapon on a vital part of the victim's body. Commonwealth v. Drumheller, 808 A.2d 893 (2002). It is clear that, a rational juror could have inferred from the evidence that Petitioner intended to kill the victim. As the trial court noted, Petitioner fired four shots at the victim, two of which he fired after the victim had fled inside the bar. While Petitioner testified that he only intended to scare the victim when he shot at him four times, the jury obviously did not find his testimony to be credible. The state court's determination is entitled to considerable deference under AEDPA and Petitioner has not demonstrated that habeas relief is warranted on this claim.

5. Trial counsel was ineffective for failing to properly communicate and consider the plea offer, and appellate counsel was ineffective for failing to raise this claim in post-sentence motions.

Petitioner argues that trial counsel was ineffective because the Commonwealth offered a general plea to third degree murder and he refused the offer without consulting Petitioner. He further argues that trial counsel was ineffective because he never informed him of the maximum sentence for third-degree murder, but instead told him that if he went to trial, that the most he could be convicted of was voluntary manslaughter, with possible sentences of three to six, four to eight, or five to ten years, including a possibility of boot camp.

During a PCRA hearing held on January 9, 2009, Petitioner's trial counsel testified that he sought to get an offer of third-degree murder and informed Petitioner of the penalty for that

offense, as well as the penalty for first-degree murder. He testified that the only reference he made to boot camp was that it could be a potential sentence if Petitioner was convicted of involuntary manslaughter. Trial counsel said that he asked the prosecutor to consider a plea to third-degree murder with a fixed sentence of ten years but the prosecutor refused and would not consider a general plea to that offense. Trial counsel testified that, despite discussions, there was never a plea agreement so he had no offer to convey to his client. He also testified that he never rejected a plea offer without first consulting his client.

The prosecutor substantiated trial counsel's testimony. He stated that trial counsel had asked for a general plea but was told that it was not an option. He also stated that there was a discussion of the possibility of a plea to third-degree murder with an agreed-upon sentence akin to the statutory maximum of 20 to 40 years, but that this never became a formal plea offer. In addressing why this claim was not raised on direct appeal, appellate counsel testified that trial counsel had conveyed to him that he had attempted to but was unsuccessful in obtaining a deal.

Following the hearing, Judge Nauhaus found that the prosecutor did not offer Petitioner any agreement in exchange for a plea to third degree murder, or any other plea agreement. (ECF No. 8-7 at pp.33-34; PCRA Order of Court dated Jan. 29, 2009; APP at pp.260-61.) On habeas review, this factual finding is entitled to a presumption of correctness under § 2254(e)(1), and Petitioner can only rebut it by clear and convincing evidence, which he has not done. The PCRA court concluded that trial counsel was not ineffective because there was no plea offer to convey and the Superior Court affirmed. This was neither contrary to nor an unreasonable application of Strickland. *See* Compean v. United States, No. 3:06-CR-50-S, 2013 U.S. Dist. LEXIS 168882, 2013 WL 6196517, at *7 (W.D. Ky. Oct. 18, 2013) (Counsel not ineffective for allegedly failing to convey a plea offer that never existed in the first instance.) As to Petitioner's contention that

trial counsel did not adequately advise him of the possible offenses of which he could be convicted and the possible penalties he faced, Petitioner has also not demonstrated an entitlement to habeas relief. The trial transcript reveals that Judge Nauhaus explained to Petitioner the five crimes encompassed by criminal homicide and Petitioner indicated that he understood the maximum penalties associated with first, second and third degree murder. Petitioner also indicated that trial counsel fully explained each crime and that he did not have any additional questions. Therefore, even assuming trial counsel did not explain this to him, there is no prejudice because it was explained to him by Judge Nauhaus.

6. <u>Trial counsel was ineffective for failing to investigate Petitioner's mental health conditions at the time of the shooting, which included severe depression and attention deficit disorder, and appellate counsel was ineffective for failing to raise this claim in post-sentencing motions.</u>

Petitioner claims that counsel was ineffective for failing to investigate his mental health conditions at the time of the shooting, which would have supported a diminished capacity defense. According to Petitioner, these conditions included severe depression and attention deficit hyperactivity disorder (ADHD).

Under Pennsylvania law, the diminished capacity defense is used when "a defendant attempts to negate the element of specific intent to kill and, if successful, first degree murder is reduced to third degree murder." *See* <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005) (quoting <u>Commonwealth v. McCullum</u>, 738 A.2d 1007, 1009 (Pa. 1999)). In describing diminished capacity, the Pennsylvania Supreme Court has stated that "psychiatric testimony which speaks to the legislatively defined state of mind encompassing a specific intent to kill is admissible." <u>Commonwealth v. Weinstein</u>, 451 A.2 1344, 1347 (Pa. 1982). However, psychiatric testimony is irrelevant unless "it speaks to mental disorders affecting the cognitive functions [of deliberation

and premeditation] necessary to formulate a specific intent." Id. Psychiatric evidence that a defendant lacked the ability to control his actions or that he acted impulsively will not establish diminished capacity. Commonwealth v. Zettlemoyer, 454 A.2d 937, 943 (Pa. 1982) (citing Weinstein, 451 A.2d at 1350). *See also* Commonwealth v. Travaglia, 661 A.2d 352, 359 (1995) (citing cases). Furthermore, the diminished capacity defense requires a defendant to admit general culpability. Commonwealth v. Legg, 711 A.2d 430, 433 (Pa. 1998).

At the PCRA hearing, Petitioner claimed that he was suffering from severe depression and ADHD at the time of the shooting. In support of this claim, he offered medical records from Western Psychiatric Institute and Clinic (WPIC). However, the records are dated more than two years prior to the time of the shooting and do not indicate that Petitioner was ever diagnosed with a depressive disorder. In addition, although a provisional diagnosis of ADHD Not Otherwise Specified (NOS) is noted, the social worker who conducted the assessment stated that neuropsychological testing was recommended to determine whether Petitioner in fact had ADHD. Following the hearing, the PCRA court determined that counsel was not ineffective because Petitioner offered no proof of any impairment of cognitive functions necessary to form intent and severe depression and attention deficit disorder are insufficient to establish a diminished capacity defense. (ECF No. 8-7 at pp.33-34, PCRA Order of Court dated Jan. 29. 2009; APP at pp.260-61.)

The state court's factual finding that Petitioner would not have been entitled to a diminished capacity defense is entitled to a presumption of correctness, which Petitioner has not rebutted by clear and convincing evidence. Because counsel cannot be deemed ineffective for failing to present evidence of a defense that would have been inapplicable to a defendant's case, the state court's decision was not contrary to nor an unreasonable application of Strickland.

Petitioner has not met his burden under the deferential standards of the AEDPA and therefore he is not entitled to habeas relief on this claim.

7. <u>Trial counsel was ineffective for forcing Petitioner to testify at trial, and appellate counsel was ineffective for failing to raise this claim.</u>

Petitioner claims that trial counsel was ineffective in that he never told him that he had a right not to testify. Instead, Petitioner claims that he told him that he had to take the stand and testify in order to counter Mr. Brown's testimony that he saw Petitioner holding a gun and then heard him fire shots from his car. During the PCRA hearing, trial counsel testified to the contrary and stated that he explained to Petitioner the drawbacks of testifying. He acknowledged that Petitioner initially indicated that he would be uncomfortable taking the stand but changed his mind and wanted to tell his side of the story after they prepared and practiced his testimony. He testified that he did not force Petitioner to take the stand in his own defense. Following the hearing, the trial court found that Petitioner was advised that he had the choice of whether or not to testify, that he was not forced to testify, and that he pursued a defense strategy of imperfect self-defense and chose to testify in support of this theory. (ECF No. 8-7 at pp.33-34, PCRA Order of Court dated Jan. 29, 2009; APP pp.260-61.) Petitioner has not rebutted this factual finding. Accordingly, he has not shown that trial counsel provided him ineffective assistance in connection with his fundamental constitutional right to testify. Thus, habeas relief must be denied.

8. <u>Trial counsel was ineffective for failing to request a cautionary instruction regarding rebuttal witness Charmaine Holloway, and appellate counsel was ineffective for failing to raise this claim.</u>

During trial, Petitioner denied that he knew Ms. Holloway or that he had ever previously threatened or pulled a gun on the victim. Holloway then testified on rebuttal that she and the victim were trick-or-treating with children on Halloween in 2003 when Petitioner approached them and had words with the victim. She stated that afterward, Petitioner retrieved a gun from his car, pointed it at the victim and screamed that he was going to kill him.

As a general rule, under Pennsylvania law, evidence of prior bad acts or unrelated criminal activity is inadmissible if offered only to show criminal propensity. <u>Commonwealth v. Powell</u>, 956 A.2d 406, 419 (Pa. 2008). Petitioner argues that trial counsel should have requested that the jury be instructed that Holloway's testimony could only be considered for the purpose of rebutting his statement that he did not know her or as rebuttal to his claim of being a peaceful, law-abiding citizen.

During the PCRA hearing, trial counsel testified that Holloway's testimony was properly admitted rebuttal evidence to the character witnesses who stated that Petitioner was a non-violent person and that he purposefully did not request such an instruction because it would have drawn attention to the animosity between Petitioner and the victim. Instead, he chose to impeach Holloway regarding her prior *crimen falsi* conviction of theft. Following the hearing, the judge found that trial counsel was not ineffective because he had a strategic basis for not requesting a cautionary instruction. (ECF No. 8-7 at pp.33-34, PCRA Order of Court dated Jan. 29, 2009; APP at pp.26-61.)

It is clear in this case that the decision whether to seek the cautionary instruction was a matter of sound trial strategy on the part of trial counsel for which counsel cannot be deemed ineffective. Irrespective of whether such an instruction would have been given, or have been a more effective strategy, trial counsel's strategic decision to not request it was not deficient

performance and does not constitute ineffective assistance of counsel.  *See* Marshall v. Hendricks, 307 F.3d 36, 38 (3d Cir. 2002) (holding that the existence of preferable or more effective alternative strategies does not constitute ineffective assistance of counsel).  Petitioner has not demonstrated that he is entitled to habeas relief on this claim.

9. Trial counsel was ineffective for failing to properly cross-examine Commonwealth witness Coley Davis, and appellate counsel was ineffective for failing to raise this claim.

Petitioner argues that trial counsel was ineffective for failing to more rigorously cross examine Coley Davis.  He believes counsel should have questioned Davis more thoroughly because his testimony was contradictory to that of Mr. Brown.  At trial, Davis testified contrary to Mr. Brown about certain events immediately before and during the shooting.  Brown testified that Davis "started to run up the street" before any gunfire started.  Davis, however, testified that he (Davis) saw Petitioner fire the first shot and then ran into the bar before the victim.  Petitioner argues that if the jury believed Brown, then Davis was lying and didn't see Petitioner do anything because he was running up the street before any shots were fired.  He contends that if Davis had been more thoroughly cross examined, and his credibility damaged, then his conviction for first degree murder would have been less likely.  The PCRA court rejected this claim concluding that trial counsel's cross-examination of Coley was thorough and given the overwhelming evidence of Petitioner's guilt the outcome of the trial would not have been different had Coley been questioned more thoroughly.  (ECF No. 8-7 at pp.41-47; Opinion of PCRA Court dated June 8, 2009; APP at pp.268-274.)  The state court's rejection of this claim for failure to show prejudice was not contrary to, nor an unreasonable application of Strickland. Accordingly, he is not entitled to habeas relief on this claim.

10. Trial counsel was ineffective for failing to colloquy Juror Number 10 and appellate counsel was ineffective for failing to raise this claim.

After trial commenced, Juror Number 10 informed the court's tipstaff that she knew the Petitioner's mother. The prosecutor challenged the juror for cause and the trial court granted the challenge. The trial court then asked defense counsel if he wanted to question the juror and trial counsel declined. The juror was then discharged. Petitioner claims that trial counsel was ineffective for failing to colloquy this juror.

During the PCRA hearing, trial counsel testified as to his recollection as to Juror Number 10 and testified that she appeared to have a positive relationship with the Petitioner's mother and that in hindsight he should have questioned her on her ability to be fair and impartial. Following the hearing, the judge found that the state-of-mind of Juror Number 10 was unknown and Petitioner had not shown that the outcome of his trial would have been different had she been on the jury. (ECF No. 8-7 at pp.33-34, PCRA Order of Court dated Jan. 29, 2009; APP at pp.260-61.)

Petitioner's argument that he was somehow prejudiced by trial counsel's failure to question Juror Number 10 is based on nothing more than pure speculation. To the extent that he asserts that he was denied the right to an impartial and unbiased jury, he has not identified a single aspect of his trial that would have been different had Juror Number 10 remained on the jury or that it was more likely than not that the outcome of his trial would have been different had she been on the jury. Without such information, Petitioner has failed to demonstrate prejudice. Therefore he is not entitled to habeas relief on this claim.

11. Trial counsel was ineffective for failing to assure the presence of Judge Nauhaus at jury selection since Petitioner never waived his right to have a judge present.

Petitioner argues that he was never informed by trial counsel that he had a right to have Judge Nauhaus present at jury selection, and that if he had been so advised, he would have insisted on his presence. Under Pennsylvania law, the judge's presence is not necessary when it is waived by the Commonwealth, the defense attorney, and the defendant. Pa.R.Crim.P. 631(A). At the PCRA hearing, Petitioner conceded that he may have signed the waiver form but argued that trial counsel did not explain the form to him. The PCRA court denied his claim because the record contained a signed waiver and Petitioner failed to show how the outcome of his trial would have been different had the judge presided over *voir dire*.

Notably, the Pennsylvania Superior Court has held that, where a defendant, in consultation with counsel, waives his right to have a judge present during *voir dire*, neither the statute nor any case law requires that the defendant's waiver be knowing, voluntary, and intelligent or confirmed by an on-the-record oral colloquy. *See* Commonwealth v. Fitzgerald, 979 A.2d 908, 912 (Pa. Super. Ct. 2009) (citing Taylor v. United States, 386 F. Supp. 132 (E.D. Pa. 1974). *See also* Fitzgerald v. Klopotoski, No. 09-1379, 2010 U.S. Dist. LEXIS 93897, at *27-28 (W.D. Pa. Sept. 9, 2010). Not only has Petitioner failed to demonstrate prejudice, he has also failed to demonstrate that Pennsylvania law in this regard is in violation of the United States Constitution so as to entitle him to habeas relief.

**Appellate Counsel Ineffectiveness**

In most of Petitioner's claims, he argues that his appellate counsel was ineffective for failing to raise the underlying claim on appeal. Claims of ineffective assistance of appellate counsel are also governed by the Strickland standard. United States v. Mannino, 212 F.3d 835,

840 n.4 (3d Cir. 2000). However, an attorney is not ineffective for failing to raise an argument that has no merit. *See* United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective assistance of counsel based on an attorney's failure to raise a meritless argument."). Because each of Petitioner's underlying claims is without merit, appellate counsel cannot be deemed ineffective.

**Certificate of Appealability**

A certificate of appealability will be denied because Petitioner has not made a substantial showing of the denial of a constitutional right or shown that jurists of reason would disagree as to the Court's resolution of his claims. *See*, *e.g.*, Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural ground); Walker v. Government of the Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).

**Conclusion**

For the reasons stated herein, the Petition for Writ of Habeas Corpus will be denied. An appropriate order will issue separately.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:     Counsel of Record
        *Via ECF Electronic Mail*

23